**Bernard Flood, Administrator of the Estate of James Lee Flood, Deceased, Petitioner-Plaintiff-Appellee, v. Country Mutual Insurance Company, a Corporation, Respondent-Defendant-Appellant.**

Gen. No. 10,885.

Fourth District.

December 6, 1967.

Rehearing denied January 2, 1968.

TRAPP, J., dissenting.

Craig and Craig, of Mattoon (Whitney D. Hardy, of counsel), for appellant.

Glenn & Logue, of Mattoon (Thomas J. Logue, of counsel), for appellee.

SMITH, J.

This is an appeal by the defendant insurance company from an order of the circuit court refusing to stay an arbitration proceedings then pending under an arbitration agreement contained in a policy issued by the defendant to the plaintiff and ordering that the arbitration proceedings proceed.

The insurance policy in question provided that the insurer would pay to the insured or his legal representatives such damages as owed from the owner or operator of an uninsured vehicle because of bodily injury arising

out of the ownership, maintenance or use of such uninsured vehicle. It further provided that "for the purposes of this coverage, determination as to whether the Insured or such representative is legally entitled to recover such damages, and if so the amount thereof shall be made by agreement between the Insured or such representative and the Company or, if they fail to agree and the Insured or the Company so demands, by arbitration." It further provided that if any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner of such a vehicle or do not agree as to the amount of payment which may be owing under this section, then "upon written demand of such person or upon written demand of the Company, the matter or matters upon which such persons and the Company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association." The plaintiff-insured demanded arbitration. The defendant refused to submit the matter to arbitration and insists that whether or not there is coverage under the policy is a question for the court and not for arbitration. Otherwise stated, the defendant-company's position is that the arbitrator is without jurisdiction or authority to determine whether or not there is coverage under the policy. Indeed the motion of the defendant to stay the arbitration proceedings asked the court to stay that proceedings until such time as the plaintiff should institute a declaratory judgment suit to determine whether or not there was any such coverage and to order that the institution of such proceedings by the plaintiff be a condition precedent to the termination of any issue by way of arbitration. This position is grounded upon the very simple proposition that if there is no coverage, there is nothing to arbitrate.

Other jurisdictions have held that the determination as to whether or not the claimant is an insured, or whether the other vehicle was actually uninsured or

whether there was a hit-and-run driver involved are coverage questions not encompassed by an arbitration clause in an insurance policy. Vanguard Ins. Co. v. Polchlopek, 18 NY2d 376, 275 NYS2d 515, 222 NE2d 383; Western Casualty & Surety Co. v. Strange, 3 Mich App 733, 143 NW2d 572; Hartford Accident & Indemnity Co. v. Travelers Ins. Co., 25 Conn Supp 414, 206 A2d 847; Damsel v. State Farm Mut. Automobile Ins. Co. (Fla App), 186 So2d 825. The New York Court of Appeals by a 4–3 decision held likewise in Rosenbaum v. American Surety Co. of New York, 11 NY2d 310, 229 NYS2d 375, 183 NE2d 667, and it would appear that the language considered in that case is substantially word for word with the arbitration provisions of the policy we now examine. While these cases are persuasive, they are not controlling. The policy in question provides that if the claimant and the company do not agree that the claimant is legally entitled to recover damages or they do not agree as to the amount of payment which may be owing, then "the matter or matters upon which such person and the Company do not agree shall be settled by arbitration . . . ."

■ ■   So far as the interpretation or construction of arbitration agreements are concerned, they are subject to basically the same rules which apply to all other contracts. The statutory law is deemed a part of the contract, the same as though expressly incorporated therein. Schiro v. W. E. Gould & Co., 18 Ill2d 538, 165 NE2d 286. Our statute, chapter 10, Ill Rev Stats 1965, provides in 102 § 2(a) that if the opposing party denies the existence of an agreement to arbitrate, the court should proceed summarily to a determination of that issue so raised and shall order arbitration if it finds for the moving party, otherwise, the application for arbitration shall be denied. Paragraph (b) likewise provides that the court may stay an arbitration proceeding commenced or threatened

on a showing that there is no agreement to arbitrate and states "That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration." Paragraph (e) of the same statute provides "An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown." It seems clear to us, therefore, that the intervention of the court is limited to the single issue as to whether or not there is an arbitration agreement. We have already observed that the policy provisions stated that upon written demand "the matter or matters upon which such person and the Company do not agree shall be settled by arbitration." The policy does not read "*such* matter or matters" and thus limits the matters to be submitted to arbitration to matters contained in the preceding paragraph. That the policy could have limited the issues to the liability of the hit-and-run driver to the claimant is conceded. It didn't. We agree with the minority in Rosenbaum that the language is unequivocal. It is for the arbitrator to determine from the facts whether or not there is coverage under this policy.

The view just stated is supported by School Dist. No. 46 v. Del Bianco, 68 Ill App2d 145, 215 NE2d 25. In that case, the Appellate Court said, "The foregoing provisions of the Act militate against the contention that a party to an arbitration agreement may choose between the judicial or arbitration forum. The sole issue under the Act on the preliminary hearings to compel or stay arbitration, is whether there is an agreement to arbitrate. If so, the court should order arbitration; if not, arbitration should be refused. Upon this simple formula, the preliminary hearings on such issue should be deter-

362

mined." The same court states at page 154, "However, if the dispute is over the scope of the issues intended to be submitted to arbitration and they are not clearly defined in the arbitration clause or agreement, as in the case at bar, then a construction by the court of the clause or contract in the light of section 2 would end in destroying the agreement of the parties that a specific term or the terms and meaning of the arbitration clause should be determined by the arbitrators." The court likewise said at page 155, "Where there is an agreement to arbitrate and its scope is reasonably in doubt, the issue of arbitrability should be initially determined by the arbitrators, subject to the protective reservations of section 12 of the Act—under which the court may vacate an award under the varying conditions therein specified." If, therefore, arbitration fails to dispose of the entire controversy, the parties may then litigate the issue of the scope of arbitrability under section 12 of the Act which provides, among other things, that the court shall vacate an award where "(3) The arbitrators exceeded their powers; . . . ."

The entire contract covering protection against bodily injury by an uninsured vehicle is contained in section II of the policy. The paragraph of this section entitled "Coverage" provides "determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof" shall be by agreement or in default thereof by arbitration. The two items refer specifically to damages by an uninsured motorist and are clearly arbitrable. This same section II defines "Insured," "Vehicle," "Uninsured Vehicle," and "Hit-and-Run Vehicle." A paragraph entitled "Arbitration" is significantly different from the language in the "Coverage" paragraph. It provides that if the parties "do not agree as to the amount of payment which may be *owing under this Section*" (emphasis

supplied) then arbitration may be had. Does this mean owing by the uninsured motorist or does it mean owing by the defendant-company under the terms of section II? If it means the latter—which we think it does—then the issue of whether or not the claimant is an insured, whether the other vehicle was actually uninsured, or whether there was a hit-and-run driver involved are questions which must be resolved in favor of the plaintiff before there is any obligation on the company to make any "payment which may be owing under this Section," and the amount, if any, "owing under this Section" is subject to arbitration. To interpret the words last quoted to mean "the amount of payment which may be owing [by the uninsured motorist or the hit-and-run driver] under this Section" is to add words which are simply not there. These are already arbitrable under the coverage paragraph. It seems transparently clear to us that the arbitration paragraph deals not with the liability of the uninsured motorist, but deals with the liability of the company to pay under the contract, and that the "coverage" issues presented on this record are properly subject to arbitration in determining whether or not there is anything owing by the company under section II.

██ ██ The basic intention of our Arbitration Act is to discourage litigation and foster the voluntary resolution of disputes in a forum created, controlled and administered by the agreement to arbitrate and by the statute. This benign policy, in our judgment, is best promoted and aided by a construction that a court is in the first instance limited to a determination as to whether or not an arbitration agreement exists, and that questions of the scope of coverage should in the first instance be determined by the arbitrator in the arbitration proceedings, where that scope is not unequivocally limited and confined by the contract. It could have been, but it

wasn't unequivocally so limited and confined in this contract.

We, therefore, conclude that the judgment of the trial court in the instant case is correct and that it should be and it is hereby affirmed.

Affirmed.

CRAVEN, P. J., concurs.

TRAPP, J., dissents:

TRAPP, J., dissenting:

In the adopted opinion the contract is construed to require that defendant arbitrate the issue as to whether the person for whom claim is made was an insured person under the definition contained therein.

There appear to be inherent contradictions in the opinion which states both, (1) that the single issue before the trial court is whether or not there is an arbitration agreement, and, (2) that while the contract could have limited the issues to the liability of the hit-and-run driver, it failed so to do.

Both of the two paragraphs in the contract in which there is reference to arbitration clearly define and limit the issues to be arbitrated in the following language:

(a) A paragraph which the opinion quotes as providing "coverage" in which defendant agrees:

"To pay all sums which the Insured or his legal representatives shall be legally entitled to recover *as damages from the owner or operator of an Uninsured Vehicle* because of bodily injury, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such Un-

insured Vehicle; provided, for the purposes of this coverage, determination as to whether the Insured or such representative is *legally entitled to recover such damages,* and if so the amount thereof shall be made by agreement between the Insured or such representative and the Company or, if they fail to agree and the Insured or the Company so demands, by arbitration." (Emphasis supplied.)

In this clause, the adjective "such" is employed to modify "damages," thus achieving the specificity required by the opinion as to other "matters."

(b) A paragraph providing "Arbitration" is in the following language:

"If any person making claim hereunder and the Company do not agree that such person is *legally entitled to recover damages* from the *owner or operator of an Uninsured Vehicle* because of bodily injury to the Insured, *or do not agree as to the amount of payment* which may be owing under this Section, then, upon written demand of such person or upon written demand of the Company, *the matter or matters* upon which such person and the Company do not agree shall be settled by arbitration . . . ." (Emphasis supplied.)

Grammatically, in the phrase, "the matter or matters," the word "the" is used as a function word to indicate that the following noun refers to something previously mentioned or clearly understood from the context. It likewise achieves a high quantum of specificity.

As stated in the opinion, Section II does define "Insured," "Vehicle," "Uninsured Vehicle" and similar terms. These matters are in separate paragraphs and

no reference to arbitration is made concerning any of them.

It is apparent that the language of the policy in the paragraph stating when payment is to be made to the insured, and in the paragraph specifically and solely prescribing arbitration, limits the arbitration procedure to the determination of specific factual issues, i. e., (1) whether claimant is "legally entitled to recover damages from the owner or operator of an Uninsured Vehicle . . . ," and, (2) if he is so entitled, the amount to be recovered.

In the statutory provision, chapter 73, § 755(a) (Ill Rev Stats 1965), relating to "uninsured" or "hit-and-run motor vehicle coverage," there is no language referring to arbitration of disputes in this form of insurance.

The Uniform Arbitration Act, section 1. (C 10, § 101 Ill Rev Stats 1965) authorizes an agreement to submit any existing controversy to arbitration, and further provides that there may be:

> ". . . a provision in a written contract to submit to arbitration any controversy thereafter arising . . . ."

The term "any" is, of course, distinguishable from the term "all," as the former means one or more chosen from an undetermined number.

The use of arbitration, therefore, is a matter of contract between the parties and it seems axiomatic that parties may contractually designate specific matters without assuming an obligation to arbitrate all matters of a dispute.

The Uniform Arbitration Act, § 2(a) provides that if a party claims an agreement to arbitrate, but the other party denies the existence of an agreement, the court shall determine summarily the issues so raised, and, in § 2(b), on a party's application, the court may stay arbitration proceedings commenced or threatened upon a

367

showing that there is no agreement to arbitrate. If such issue is properly in dispute, the court shall summarily dispose of it.

Defendant's motion in the trial court for the stay of arbitration proceedings presents an issue not specified as a matter for arbitration, and it is precisely an issue for summary disposition by the trial court under § 2(b) of the Uniform Arbitration Act.

The conclusion set out in the opinion that provision for "any" arbitration requires arbitration of "all" controversies under the contract predictably will reduce the use of arbitration procedures, through contract or agreement, to those instances where arbitrable issues can be strictly "all or none." This determination, in fact, makes § 2(a) and § 2(b) of the Uniform Arbitration Act without meaning or application, except in the unlikely event that a party demands arbitration as to a contract which contains no reference whatsoever to arbitration. The opinion has noted authorities consistent with the view expressed in this dissent.