MARYLAND CASUALTY COMPANY *v.* McGEE

1. ARBITRATION AND AWARD—ARBITERS' POWER—SOURCE LIMITATIONS.

Arbiters, as a general principle, derive their powers from the arbitration submission agreement; however, there is no rule that the only matters arbitrable under an insurance contract are those specified in the contract.

2. INSURANCE—ARBITRATION PROVISIONS—REASONABLENESS.

Arbitration provisions in insurance policies must be within the statute regulating arbitration provisions in an insurance policy; not all arbitration provisions meet the statutory requirements (MCLA § 500.2254).

3. INSURANCE—ARBITRATION PROVISIONS—PURPOSE.

The main purpose in inserting arbitration provisions in insurance policies and the chief reason for sustaining their validity, is that they provide a simple and inexpensive method for the prompt adjustment and settlement of claims.

4. INSURANCE—ARBITRATION PROVISIONS—DETERMINATIONS IN SEPARATE FORUM—REASONABLENESS.

An interpretation of an arbitration agreement in an insurance contract which would have the effect of requiring separate determinations of the dispute between the parties in different forums militates against the very benefits sought by arbitration and makes arbitration an unreasonable remedy under the insurance code.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award § 90.
[2–4] 44 Am Jur 2d, Insurance § 1707 *et seq.*
[5, 7] 7 Am Jur 2d, Automobile Insurance § 138.
[6] 5 Am Jur 2d, Arbitration and Award § 27.

5. Insurance—Arbitration Provisions—Prior Judicial Determination—Reasonableness.

> Any automobile insurance policy providing that the insured was entitled to benefits from injury from an uninsured motorist or a "hit and run" driver and that the right to recover and the amount of damages would be determined by arbitration precludes, before arbitration, a judicial determination of whether the insured was hit by "a hit and run" driver, because an interpretation of the policy requiring judicial determination first would negate the benefits of arbitration and make arbitration an unreasonable remedy (MCLA § 500.2254).

6. Contracts—Arbitration Provisions—Statutes.

> An agreement in a contract to arbitrate future disputes, by statute, stands as a submission to arbitration of any controversy arising under the contract which is not expressly exempt from arbitration by the terms of the contract (MCLA § 600.5001[2]).

7. Insurance—Arbitration Provisions.

> An automobile insurance policy providing coverage for injury from a "hit and run" driver and requiring the insured and the insurer to arbitrate differences on the right to recover, the amount of damages and any other disputed issues precludes a judicial determination, before arbitration, whether the insured was hit by a "hit and run" driver, because the question of the existence of a "hit and run" driver was not expressly exempted from arbitration by the policy (MCLA § 600.5001[2]).

Appeal from Wayne, James Montante, J. Submitted Division 1 November 10, 1970, at Detroit. (Docket No. 8656.) Decided April 21, 1971.

Complaint by the Maryland Casualty Company against Eugene McGee, its insured, and Doris Alexander for declaratory judgment as to whether the insured had been in an accident with a "hit and run" driver. Summary judgment granted for defendants and an order requiring arbitration to determine whether defendants were hit by a "hit and run" driver. Plaintiff appeals. Affirmed.

*Davidson, Gotshall, Halsey, Kohl, Nelson, Secrest & Wardell (Richard H. Scholl,* of counsel), for plaintiff.

*Eskin, Cohen, Bradford & Lakind (Stephen M. Landau,* of counsel), for defendants.

Before: V. J. BRENNAN, P. J., and LEVIN and PETERSON,* JJ.

PETERSON, J.    Plaintiff is defendant's motor vehicle insurer. In addition to the usual casualty and liability coverage, the policy purchased by defendant included uninsured motorist coverage by which plaintiff agreed to pay its insured all damages sustained by the insured in an accident "arising out of the ownership, maintenance or use of (an) uninsured automobile", which the insured would "be legally entitled to recover from the owner or operator of [such] uninsured automobile". The policy further provides that the right to such damages and the amount thereof shall be determined by arbitration, absent agreement thereon:

"provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

And:

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this part, then, upon written demand of either, *the matter or matters upon which such person and the company do not agree shall be settled by arbitration* in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such persons and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this part." (Emphasis added.)

One of the policy definitions of an uninsured automobile, is "a hit-and-run automobile", which in turn is defined as follows:

" 'hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'; (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (c) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident."

Defendant insured alleges that on February 13, 1968, on highway I-94 an unidentified automobile cut

in front of his car, striking it, and driving it off the expressway, with resulting injuries to defendant and his passenger. Claiming to come within the "hit-and-run" definition above, defendant instituted a claim with the American Arbitration Association.

Plaintiff insurer, however, asserts that there can be no arbitration, denying that there was any physical contact between defendant's automobile and an alleged "hit-and-run" vehicle. It contends that while the insurance contract precludes judicial determination of the cause of action of the insured *vis-a-vis* the uninsured motorist, if any, that being determined solely by arbitration,[1] *whether there is a question for arbitration* is a separate question which is not arbitrable and which can be settled solely by judicial proceedings. In this view of the contract, one of the parties in a case such as this must seek declaratory relief.[2] Assuming a determination favorable to the insured on the question of whether there was a "hit-and-run" accident, or whatever other factual question might be posed as a prerequisite to arbitration,[3] the dispute would then be commenced anew in arbitration. In such cases, the result is to duplicate in two different forums the trial of what is essentially the same factual question arising out of a single event.

Plaintiff accordingly brought its action seeking a declaratory judgment as to whether its insured had been in an accident with an uninsured motorist as

---

[1] See *Norton* v. *Allstate Insurance Company* (ED Mich, 1964), 226 F Supp 373; *Van Horn* v. *State Farm Mutual Automobile Insurance Company* (CA 6, 1968), 391 F2d 910; and *Stagray* v. *Detroit Inter-Insurance Exchange* (1965), 1 Mich App 321.

[2] In *Lord* v. *Auto Owners Ins. Co.* (1970), 22 Mich App 669, it was the insured. Here, as in *Western Casualty & Surety Co.* v. *Strange, infra,* it is the insurer.

[3] Many such questions are listed in Widiss, Uninsured Motorist Coverage (W. H. Anderson Co., Cincinnati, 1970), § 6.21. See also the annotation on uninsured claim arbitration in 29 ALR3d 328.

defined in the contract so as to be entitled to go to arbitration about that accident. The trial judge took a more frugal view of the procedure. He concluded that it was wasteful of the time and effort of the parties, productive of unnecessary litigation, and inconsistent with the ends which arbitration is designed to meet. He granted the insured's motion for summary judgment and entered an order requiring the arbitrator to determine whether there was physical contact between the insured vehicle and the alleged "hit-and-run" vehicle. Plaintiff appeals.

This question was before the Court in *Western Casualty & Surety Company* v. *Strange* (1966), 3 Mich App 733, 736. In that case, we said:

"Since the only arbitrable matters are those specified in the insurance contract (*Carr* v. *Kalamazoo Vegetable Parchment Co.* [1958], 354 Mich 327), we must look to the language of the policy for decision. As we read it, 3 things must be determined before plaintiff is liable to defendant, namely: (1) that someone other than defendant was the proximate cause of the accident; (2) that such person was operating an uninsured vehicle or was a hit-and-run motorist so determination of insurance coverage is not possible; (3) the amount of defendant's recovery.

"Interpretation of this, or similar, language has not been presented to the Michigan Supreme Court. Under a similar arbitration provision, the court of appeals of New York held in *Rosenbaum* v. *American Surety Company of New York* (1962), 11 NY2d 310 (229 NYS2d 375, 183 NE2d 667), that items (1) and (3) above were arbitrable but that item (2) was for court determination. This interpretation was adopted by the superior court of Connecticut in *Hartford Accident & Indemnity Co.* v. *Travelers Insurance Co.* (1964), 25 Conn Sup 414 (206 A2d 847). It appears to us as reasonable and proper, and we adopt it as controlling in the case before us."

We think *Western Casualty* errs in assuming as a basic premise that *Carr* says that the only matters arbitrable under an insurance contract are those specified in the contract.[4]    *Carr* and *Acme Cut Stone Co.* v. *New Center Development Corp.* (1937), 281 Mich 32, upon which *Carr* relies, merely state the general proposition that arbiters derive their powers from the arbitration submission agreement. Neither *Carr* nor *Acme* involved insurance contracts.    Neither dealt with attempts to segregate disputed issues into arbitrable sheep and judicially-triable goats (or *vice versa*). And neither concerned situations where it might be recognized that public policy, legislatively or judicially expressed, might be relevant in construing the agreement of the parties.

*Western Casualty* did not note some such public policy requirements.    Section 2254 of the Insurance Code of 1956 (PA 1956, No 218; MCLA § 500.2254 [Stat Ann 1957 Rev § 24.12254]) re-enacted a venerable provision of Michigan insurance legislation:

"No article, bylaw, resolution or policy provision adopted by any life, disability, surety, or casualty insurance company doing business in this state prohibiting a member or beneficiary from commencing and maintaining suits at law or in equity against such company shall be valid and no such article, bylaw, provision or resolution shall hereafter be a bar to any suit in any court in this state: Provided,

---

[4] *Western Casualty* assumed for *Carr* the precedential qualities of the New York precedents to *Rosenbaum* v. *American Surety Company of New York* cited in the excerpt from *Western Casualty* above.    Without elaborating on the differences, suffice it to say that *Rosenbaum* was a 4–3 decision, with three New York judges concluding that the agreement to arbitrate "the matter or matters upon which the insured and the company do not agree" left no room for a separate determination of the question of injury by an insured motorist as a condition precedent to arbitration.    That view has been followed in decisions of two other states; *Employers Fire Insurance Company* v. *Garney* (1965), 348 Mass 627 (205 NE2d 8) and *National Grange Mutual Insurance Company* v. *Kuhn* (1968), 428 Pa 179 (236 A2d 758).

however, That any reasonable remedy for adjudicating claims established by such company or companies shall first be exhausted by the claimant before commencing suit."

Under Act 218, and its identical predecessors, arbitration agreements in insurance contracts have frequently been upheld as "reasonable" remedies for adjudicating claims.[5]   That is not to say that all arbitration agreements are reasonable under the statute, but only that arbitration agreements must meet the statutory requirement of reasonableness to be upheld.   What is reasonable in a particular case is for the courts to say.   In *Shapiro* v. *Patrons' Mutual Fire Insurance Co. of Michigan* (1922), 219 Mich 581, 586, the Court said:

"The main purpose in inserting such stipulations in insurance policies and the chief reason for sustaining their validity, is that they provide a simple and inexpensive method for the prompt adjustment and settlement of claims."

We think an interpretation of an arbitration agreement which would have the effect of chopping up a dispute between an insured and his insurer and requiring separate determinations of each portion thereof in different forums militates against the very benefits sought by arbitration and which benefits tend to make arbitration a reasonable remedy under the insurance code.

Further, the question cannot be viewed without reference to a positive legislative enactment authorizing contracting parties to agree to arbitration of future disputes under their contract.   In such cases MCLA § 600.5001(2) (Stat Ann 1962 Rev § 27A-.5001[2]) provides:

---

[5] See fn 1, *supra;* see also *Allen* v. *Patrons' Mutual Fire Insurance Company of Michigan, Limited* (1911), 165 Mich 18, and cases cited there, pp 22, 23.

"Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract *not expressly exempt* from arbitration by the terms of the contract."   (Emphasis added.)

The effect of the act, then, is to distinguish the situation in which parties agree to submission of an existing dispute, where the arbitration is dependent on the issues submitted, and the contract incorporating an agreement to arbitrate future disputes arising thereunder in which the scope of arbitration is not dependent on precisely defining what they have agreed to arbitrate but on what they have expressly withheld from future arbitration.

If there is any doubt whether the agreement of the parties to arbitrate "the matter or matters upon which (the insured) and the company do not agree" specifically includes questions involving the existence of injury from uninsured automobiles, it is clear that such language cannot possibly be construed as expressly exempting such questions from arbitration.

For these reasons we conclude that the parties provided but one means of resolving disputes under this coverage, that of arbitration.

Affirmed.

All concurred.